**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| BRADY SOUMA EWOUDOU, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 25-888 (RBW) |
| v. | ) | |
| | ) | |
| JOSEPH EDLOW, Director, U.S. Citizenship and Immigration Services, <u>et al.</u>, | ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**<u>MEMORANDUM OPINION</u>**

The plaintiff—Brady Souma Ewoudou—brings this civil action against the defendants—

Joseph Edlow, the Director of the United States Citizenship and Immigration Services; [1] Connie

Nolan, the Associate Director of the United States Citizenship and Immigration Services; and

Kristi Noem, the Secretary of the United States Department of Homeland Security—pursuant to

the Mandamus Act, 28 U.S.C. § 1361, and the Administrative Procedure Act ("APA"), 5 U.S.C.

§§ 555(b) and 702.  <u>See</u> Verified Complaint for Mandamus and Declaratory Judgment

("Compl."), ¶¶ 3–6, ECF No. 2.  Currently pending before the Court is the defendants' motion to

dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  <u>See</u> Motion to Dismiss and

Memorandum in Support Thereof ("Defs.' Mot.") at 1, ECF No. 10.  Upon careful consideration

---

[1] At the time the plaintiff filed his complaint, Kika Scott was the director of the United States Citizenship and Immigration Services.  Pursuant to Federal Rule of Civil Procedure 25(d), the Court substitutes Joseph Edlow, her successor in office.

of the parties' submissions,[2] the Court concludes for the following reasons that it must grant the defendants' motion.

## I.   BACKGROUND

### A.   Statutory Background

Under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1158(a)(1), noncitizens present within the United States may apply for asylum by filing a Form I-589 with the United States Citizenship and Immigration Services ("USCIS").  See 8 C.F.R. § 208.3(a).  Specifically, the applicant must demonstrate that he or she is unable or unwilling to return to his or her home country due to persecution or a well-founded fear of persecution on account of their race, religion, nationality, membership in a particular social group, or political opinion.  See 8 U.S.C. § 1101(a)(42)(A).  If the applicant meets any of these requirements, the Secretary of Homeland Security or the Attorney General may grant him or her asylum.  See id. § 1158(b)(1)(A).

Furthermore, the INA also instructs the Attorney General to establish a procedure within the USCIS for the consideration of asylum applications.  See id. § 1158(d)(1).  This procedure cannot result in the grant of asylum until a background check is conducted, and in the absence of exceptional circumstances, should yield an initial interview or hearing within 45 days and a final adjudication within 180 days of the filing of the application for asylum.  See id. § 1158(d)(5).

### B.   Factual Background

The following allegations are derived from the plaintiff's Complaint, unless otherwise specified.  The plaintiff is a citizen of Cameroon who "came to the United States on August 15, 2021, on an F1 nonimmigrant visa."  Compl. ¶ 14.  On December 18, 2021, the plaintiff

---

[2] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Plaintiff's Response [to] Defendant's Motion to Dismiss ("Pl.'s Opp'n"), ECF No. 12; (2) the Reply in Further Support of Defendant's Motion to Dismiss ("Defs.' Reply"), ECF No. 13; and (3) the Plaintiff's Response to Defendant's Reply in Further Support of Motion to Dismiss ("Pl.'s Sur-Reply"), ECF No. 14.

represents that he "filed [an] I-589 application for asylum and withholding of removal" with the USCIS.  Id. ¶ 15.  According to the plaintiff, "the application is currently pending at the USCIS Potomac Service Center."  Id.  While his I-589 application has been pending, the plaintiff has allegedly "made numerous written, telephonic, and in-person status inquiries with [the] USCIS . . . and he has repeatedly been informed that his case remains pending with no action needed by him."  Id. ¶ 16.  The plaintiff claims that his "ability to pursue opportunities for professional advancement have been negatively impacted by [the USCIS's] failure to adjudicate his application within a reasonable period of time" and "the delay in adjudication has prevented [him] from the ability to sponsor family members for immigration benefits, and it has also interfered with his travel needs."  Id. ¶ 17.  The plaintiff further alleges that the "[d]efendants' inaction . . . has caused inordinate and unfair amounts of stress, expense, and hassle," and has "depriv[ed] [him] of his right to a decision of his immigration status and the peace of mind to which he is entitled."  Id. ¶ 29.

## C.    Procedural Background

The plaintiff filed his complaint on March 26, 2025.  See Compl. at 1.  On July 16, 2025, the defendants filed their motion to dismiss.  See Defs.' Mot. at 1.  The plaintiff filed his opposition to the motion to dismiss3 on August 3, 2025, see Pl.'s Opp'n at 1, and the defendants filed their reply to the opposition on August 11, 2025, see Defs.' Reply at 1.  The plaintiff then filed a sur-reply on August 12, 2025.4  See Pl.'s Sur-Reply at 1.

---

3 The plaintiff re-filed his opposition with a corrected case caption on August 5, 2025.

4 The plaintiff neither requested nor received leave to file a sur-reply.  Nonetheless, to facilitate the expeditious resolution of the defendants' motion to dismiss, the Court considered the plaintiff's sur-reply.

## II.    STANDARDS OF REVIEW

### A.    Rule 12(b)(6)

A Rule 12(b)(6) motion tests whether a complaint "state[s] a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff plead[s] factual content that allows the court to draw [a] reasonable inference that the defendant[s] [are] liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

In evaluating a motion to dismiss under Rule 12(b)(6), "the Court must construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." Hettinga v. United States, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)). While the Court must "assume [the] veracity" of any "well-pleaded factual allegations" in a complaint, conclusory allegations "are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555). Also, the Court need not "accept legal conclusions cast as factual allegations[,]" or "inferences drawn by [the] plaintiff if those inferences are not supported by the facts set out in the complaint[.]" Hettinga, 677 F.3d at 476. Finally, the Court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [the Court] may take judicial notice." Equal Emp. Opportunity Comm'n v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

### III.     ANALYSIS

The defendants seek to dismiss the plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  Specifically, the defendants argue that the "[p]laintiff's Complaint should be dismissed for failure to state a claim because any delay here is not unreasonable as a matter of law" under the factors established in Telecomm. Rsch. & Action Ctr. ("TRAC") v. Fed. Commc'n Comm'n, 750 F.2d 70, 79 (D.C. Cir. 1984) (hereinafter the "TRAC" factors).  Defs.' Mot. at 8–9.  In response, the plaintiff claims that he "has a right to timely adjudication, and the duty of the agency is to timely adjudicate his application."  Pl.'s Opp'n at 10.

**A.     Whether the Plaintiff Has Stated a Plausible Claim of Unreasonable Delay**

The plaintiff's "claims under the APA and the Mandamus Act share the same standards for obtaining relief."  Hajizadeh v. Blinken, No. 23-cv-1766 (LLA), 2024 WL 3638336, at *4 (D.D.C. Aug 2, 2024).  "The central question in evaluating 'a claim of unreasonable delay' is 'whether the agency's delay is so egregious as to warrant mandamus.'"  In re Core Commc'ns, Inc., 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting TRAC, 750 F.2d at 79).

> Courts in this [C]ircuit consider six factors (the so-called 'TRAC factors') when evaluating unreasonable-delay claims: '(1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.'

Motevali v. Blinken, No. 23-cv-2133 (RC), 2024 WL 3580937, at *6 (D.D.C. July 30, 2024) (quoting TRAC, 750 F.2d at 80).  "While not 'ironclad,' the TRAC factors provide 'useful guidance in assessing claims of agency delay.'"  Hajizadeh, 2024 WL 3638336, at *4 (quoting In

re Core Commc'ns, Inc., 531 F.3d at 855). "The first and fourth factors are the most important in the visa context." Id. (quoting Da Costa v. Immigr. Inv. Program Off., 80 F.4th 330, 340 (D.C. Cir. 2023)). Of significant importance, courts in this Circuit have consistently noted that "application of the TRAC factors is appropriate at the motion-to-dismiss stage when the facts alleged do not support a plausible claim of unreasonable delay." Bega v. Jaddou, No. 22-cv-2171 (BAH), 2022 WL 17403123, at *4 n.2 (D.D.C. Dec. 2, 2022), aff'd sub nom. Da Costa v. Immig. Inv. Program Off., 80 F.4th 330 (D.C. Cir. 2023). Applying the TRAC factors here, the Court concludes that the plaintiff has failed to state a claim on which the relief requested can be granted.

### 1. TRAC Factors One & Two

"The first and most important factor [for the Court to consider] is that 'the time agencies take to make decisions must be governed by a rule of reason.'" In re Core Commc'ns, Inc., 531 F.3d at 855 (quoting TRAC, 750 F.2d at 80). This factor is most commonly analyzed in tandem with the second factor, which provides that "where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason[.]" Fakhimi v. Dep't of State, No. 23-cv-1127 (CKK), 2023 WL 6976073, at *7 (D.D.C. Oct. 23, 2023); see Hajizadeh, 2024 WL 3638336, at *4 ("The first two factors—requiring agencies to follow 'a rule of reason' related to their timeliness, and the influence of a congressionally imposed timeline—are typically considered together." (quoting Milligan v. Pompeo, 502 F. Supp. 3d 302, 317 (D.D.C. 2020)).

The plaintiff argues that "Congress has explicitly set out a timetable with which it expects USCIS to comply." Pl.'s Opp'n at 9. The defendants respond that "[a]lthough there may be an advisory benchmark, Congress's 'aspirational statement' does not carry the day here because the delay in this case 'has not reached the level of disproportionality [the D.C. Circuit has]

previously held sufficient to grant relief." Defs.' Reply at 4 (quoting Da Costa, 80 F.4th at 344) (alterations in original). "District courts have generally found that immigration delays in excess of five, six, seven years are unreasonable." Ahmadi v. Scharpf, No. 23-cv-953 (DLF), 2024 WL 551542, at *5 (D.D.C. Feb. 12, 2024) (quoting Rahman v. Blinken, No. 22-cv-2732 (JEB), 2023 WL 196428, at *4 (D.D.C. Jan. 17, 2023)). "Conversely, courts in this jurisdiction have typically concluded that delays of two or three years are not unreasonable." Motevali, 2024 WL 3580937, at *6. "And indeed, recently, the [District of Columbia] Circuit found that a delay of four-and-one-half years was not unreasonable." Id. (citing Da Costa, 80 F.4th at 342).

Here, the plaintiff claims that he "has [ ] waited more than [five] years for adjudication of his pending I-589 application."[5] Compl ¶ 36. To determine the length of delay in immigration processing cases, courts in this Circuit "seem to focus on the delay up to the issuance of the [district court's] opinion." Brzezinski v. U.S. Dep't of Homeland Sec., No. 21-cv-376 (RC), 2021 WL 4191958, at *4 n.3 (D.D.C. Sept. 15, 2021). Here, the Complaint indicates that the plaintiff filed his I-589 application on December 18, 2021, id. ¶ 15, just slightly over four years ago. Although the Court is sympathetic to the plaintiff's concerns regarding this delay, in light of "the overwhelming trend within this [C]ircuit[,]" the Court must conclude that the defendants' "delay of approximately [fifty-one] months is not unreasonable." Motevali, 2024 WL 3580937, at *7. In other words, the first two factors, considered together, favor the defendants.

### 2. TRAC Factor Four

"The fourth TRAC factor, which is 'the effect of expediting delayed action on agency activities of a higher or competing priority,' is particularly important for immigration documentation." See Hajizadeh, 2024 WL 3638336, at *5 (quoting Da Costa, 80 F.4th at 342).

---

[5] The plaintiff's sur-reply states that his application has been pending "for almost four years." Pl.'s Sur-reply at 5.

"Courts are generally hesitant to direct agencies as to which tasks to prioritize, particularly if such intervention would move the petitioner to 'the head of the queue' and 'simply move[] all others back one space and produce[] no net gain.'" Motevali, 2024 WL 3580937, at *7 (alterations in original) (quoting In re Barr Lab'ys, Inc., 930 F.2d 72, 75–76 (D.C. Cir. 1991)). "In fact, the [District of Columbia] Circuit 'has refused to grant relief, even [when] all the other facts considered in TRAC favored it, where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain.'" Id. (alterations in original) (quoting Milligan, 502 F. Supp. 3d at 319).

Here, the plaintiff does not seem to acknowledge that "[c]ompelling agency action on [his] [asylum] application would 'impose offsetting burdens on equally worthy' applicants by effectively putting [him] 'at the head of the queue,' thereby 'mov[ing] all others back one space and produc[ing] no net gain[.]'" Id. (quoting In re Barr Lab'ys, Inc., 930 F.2d at 73, 75); see also Defs.' Mot. at 13 (arguing that the fourth factor "decisively cuts against [the p]laintiff" as [the p]laintiff "essentially asks this Court to push [him] to the front of the line of I-589 applications, completely disregarding others whose petitions have been pending just as long or longer"). Rather he claims that his goal in compelling agency action on his application is "to ensure that he—along with other asylum applicants—will obtain adjudication at some point and without unreasonable delay." Pl.'s Opp'n at 10.

"But this argument ignores that a court order directing [the defendants] to process [the plaintiff's] application would still put him ahead in the queue of those similarly situated." Desai v. U.S. Citizenship & Immigr. Servs., No. 20-cv-1005 (CKK), 2021 WL 1110737, at *7 (D.D.C. Mar. 22, 2021). In other words, "granting [the p]laintiff [his] requested relief would require the [USCIS] to 'reorder[] [its] priorities' in a case where the 'agency is in a unique—and

8

authoritative—position to . . . allocate its resources in the optimal way.'" <u>Motevali</u>, 2024 WL 3580937, at *8 (alterations and omission in original) (quoting <u>In re Barr Lab'ys</u>, 930 F.2d at 76). "This, the [District of Columbia] Circuit has admonished, is something that courts should not do." <u>Id.</u>  Accordingly, for the foregoing reasons, the Court finds that the fourth <u>TRAC</u> factor weighs in the defendants' favor.

### 3.  <u>TRAC</u> Factors Three & Five

"The third and fifth factors overlap[,]" and require the Court to consider "the impact on human health and welfare and economic harm, [as well as] the nature and extent of the interests prejudiced by the delay." <u>Liberty Fund, Inc. v. Chao</u>, 394 F. Supp. 2d 105, 118 (D.D.C. 2005).

Here, the plaintiff has alleged "unfair amounts of stress, expense, and hassle," as well as the inability to pursue professional opportunities, travel abroad, or sponsor his family members for immigration benefits.  Compl. ¶¶ 17, 31.  The defendants argue that such alleged harms are "the sort of prejudice . . . inherent in the [adjudication] process." Defs.' Mot. at 14 (quoting <u>Xu v. Cassna</u>, 434 F. Supp. 3d 43, 54 (S.D.N.Y. 2020)).  Although the Court is sympathetic to the plaintiff's position, "without more facts suggesting otherwise, these harms[, standing alone,] do not threaten [the p]laintiff['s] physical health and wellbeing in a manner compelling enough to overcome [the defendants'] advantage on the more important factors." <u>Hajizadeh</u>, 2024 WL 3638336, at *6; <u>see id.</u>; <u>Da Costa</u>, 80 F.4th at 345 (concluding that the third and fifth <u>TRAC</u> factors did not favor the plaintiffs where "they d[id] not, for example, allege that they [were] unable to access electricity, water, food, or shelter").  These factors therefore weigh in favor of the defendants.

### 4.  <u>TRAC</u> Factor Six

"The final <u>TRAC</u> factor considers whether the agency's bad faith caused the delay." <u>Sawahreh v. U.S. Dep't of State</u>, 630 F. Supp. 3d 155, 164 (D.D.C. 2022).  Here, the plaintiff's

Complaint "does not allege that a decision on [his] application was delayed intentionally or was the result of any impropriety." Id.; see generally Compl. "Therefore, 'the good faith of the agency in addressing the delay weighs against equitable relief [being granted].'" Sawahreh, 630 F. Supp. 3d at 164 (quoting Milligan, 502 F. Supp. 3d at 319).

## IV.    CONCLUSION

Upon consideration of the TRAC factors, the Court concludes that the plaintiff has not plausibly alleged that the delay in adjudicating his asylum application is unreasonable. More specifically, although "[t]his delay has concededly harmed [the plaintiff], [ ] the rule of reason supplied by the caselaw, judicial deference to agency priority-setting, and the absence of bad faith all suggest that the delay is not yet unreasonable." Id. Accordingly, although the Court is not unsympathetic to the plaintiff's situation and encourages the defendants to act on the plaintiff's application as expeditiously as possible, the Court must grant the defendants' motion to dismiss the plaintiff's claims.

**SO ORDERED** this 20th day of March, 2026.[6]

REGGIE B. WALTON
United States District Judge

---

[6] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.